OCT 3 1 2011



manatt | phelps | phillips

Robert D. Becker
Manatt, Phelps & Phillips, LLP
(888) 566-8607
RDBecker@manatt.com

Office of the President or Chief Executive Officer
Baldor Electric Company
5711 R.S. Boreham, Jr. St.
Fort Smith, AR 72901

October 28, 2011

Client-Matter: 44663-060

**BY CERTIFIED MAIL - RETURN RECEIPT REQUESTED**

Re:   U.S. Patent No. 6,275,821, entitled "Method And System For Executing A Guided Parametric Search"

   Confidential Settlement Communications Pursuant to FRE 408

Dear Sir or Madam:

We represent Kelora Systems, LLC ("Kelora"), which owns the patent referenced above (the '821 Patent). Kelora sells a guided parametric search engine (see www.kelora.com). The '821 patent covers guided parametric search. A copy of the '821 Patent and the reexamination certificate for the '821 Patent, as well as other materials referenced in this letter, are available from www.kelora.com/licensing.html.

We are writing because Baldor Electric Company offers guided parametric search through www.baldor.com. The website infringes the '821 Patent by performing guided parametric search in a manner that practices all of the limitations of one or more claims of the '821 Patent.

Via www.baldor.com, Baldor Electric Company performs the claimed methods with a server connected to a client computer through a computer network, and assists a user in identifying a subfamily of items within a family of items offered at www.baldor.com.

A computer readable data file is used to store data about items. Available alternatives are displayed on a feature screen when a file is read. Then, a first selection criteria of at least one alternative is accepted at the server. After the selection criteria is accepted, a first subfamily that satisfies the first selection criteria is determined, and the feature screen is revised to show the available alternatives of the first subfamily.

Next, a new selection is made from the feature screen and a second selection criteria is accepted by the server. As reflected in the URL, the second selection criteria includes a segment

EXHIBIT A

# manatt

manatt | phelps | phillips

Page 2

corresponding to the alternative of the first selection criteria plus a segment corresponding to the new alternative. After the second selection criteria is accepted, a second subfamily that satisfies the second selection criteria is determined and the feature screen is revised to show the available alternatives of the second subfamily. You may notice the revision of the feature screens by observing a reduction in the number of available alternatives for a given feature.

This functionality infringes Claim 1 of the '821 patent. Performing additional steps does not avoid infringement. Further, the details of how the server interacts with the data file are not specified in the claims.

The above discussion regarding infringement is preliminary and non-binding and is for settlement purposes only.

Notwithstanding whether you use third party software or service providers to provide this functionality, the claims of the '821 patent are such that your site directly infringes them. Our examination of your site indicates that it performs each element of one or more of the claimed methods. For example, as discussed above, elements of Claim 1 recite identifying a subfamily of items. There can be no doubt that your site performs this step, even if it does so by contracting with a third party to implement unclaimed details and/or uses infrastructure purchased from another to do so. To the extent you may have indemnity issues with third party software or service providers, that would be between you and your indemnifier and does not address the underlying issue between you and Kelora concerning infringement of the '821 patent.

Kelora has been pursuing patent infringement claims against numerous companies, including Microsoft, eBay, and Shopzilla. All of these matters are now before Judge Wilken in the Northern District of California.

On May 5, 2011, we participated in a hearing before Judge Wilken on a summary judgment motion brought by eBay and Microsoft. Shopzilla had originally joined in the motion, but withdrew the motion and settled with Kelora before the hearing. The motion asserted that the reexamined claims of the '821 patent were invalid for the same reasons set forth in a prior summary judgment order by Judge Wilken as to the original claims and that Kelora was bound by that prior order.

Judge Wilken did not agree that the claims were invalid and denied the motion from the bench. Her written order (available on the website mentioned above) followed a few days later.

After the May 5 hearing, Judge Wilken also ruled that damages are not available for claims 1 and 2 prior to the reexamination, but Kelora has not been basing its license offers on prior damages. Indeed, Kelora had offered to stipulate to the relief requested by Microsoft and eBay. They refused to stipulate, so the motion went forward.

# manatt
manatt | phelps | phillips

Page 3

Also on May 5, Judge Wilken indicated that she would accelerate the schedule for related litigation, expressing a desire to put those matters and the Microsoft & eBay matter on the same schedule. She effected that schedule at the May 31, 2011 case management conference for the sixteen parties who had not settled out of the related litigation.

Additional parties have since settled out, and non-parties have been taking licenses. Examples of press releases can be found on the above referenced website. There are many other licensees, including household names.

One party, Dell, sought to have Kelora's complaint dismissed for failing to state a claim. Seeing no need to hold a hearing on that motion, Judge Wilken denied Dell's motion on the pleadings in an order issued on May 31, 2011 (on the website).

Kelora is willing to grant you - as it has granted to others - a fully paid-up, non-exclusive, non-transferable license for REDACTED This offer expires on November 28, 2011. If, however, you pay for your license by November 18, 2011, you will receive a 25% discount off that price. If we do not receive a satisfactory response by November 28, 2011, Kelora will pursue its legal remedies. If there is a subsequent settlement negotiation, you can rest assured that the license fee will have increased considerably. This offer is based on Kelora's understanding that the 2010 annual revenue associated with your infringement is approximately REDACTED The license agreement associated with this offer is attached. The license Kelora is offering is a lump sum royalty calculated using 2010 numbers. It is not based on a fixed percentage of revenue; the rate effectively drops as revenue increases. All licenses to date have been in accordance with this.

When considering this, please bear in mind the cost of implementing a non-infringing alternative. First, there are the basic costs of procuring or developing a search infrastructure, testing it, and deploying it. Also, third party research tells us that customers have become accustomed to this type of functionality, such that it is likely you will see lower conversion rates and higher levels of customer dissatisfaction on your own site if you chose not to implement it or implement an inferior solution. For example, as far back as 2002 Forrester Research reported that search was "very" or "extremely" important to all e-commerce sites surveyed and that deploying effective search technology, such as what you now have and what is claimed in the '821 patent, typically costs upwards of REDACTED with the average in the REDACTED to REDACTED range for a mid-size website. See www.internetretailer.com/2002/03/28/when-searching-is-no-longer-enough. An article from Internet Retailer magazine in March of that year reports that when one site installed "search and browse" or "guided navigation", conversion rates increased 8.5% with no other change in marketing. Id. Your own experience probably confirms this. There are also

# manatt

manatt | phelps | phillips

Page 4

the additional costs of being at a disadvantage vis-à-vis competitors who have settled with our client and who are therefore able to continue providing this functionality -- and according to an August 2010 ATG study, nearly 70% of companies with web revenue of up to REDACTED are looking to deploy or improve guided or faceted search. See www.atg.com/resource-library/white-papers/atg-mid-market-survey.pdf. This number is reinforced by e-tailing group's 2010 Annual Merchant Survey, which found that 70% of merchants believe that guided navigation is very valuable. See www.e-tailing.com/content/?p=1322. Kelora understands that providing the type of search functionality covered by the claims of the '821 patent is critical to the success of an e-commerce site such as yours. Our client's years of experience developing, selling, and supporting this type of infrastructure helps it appreciate the costs involved. This experience is also why Kelora has authorized us to offer such reasonable settlement terms and make it easier for you to continue operating with your current infrastructure in place.

**Although Kelora would prefer to resolve this matter without additional litigation, enclosed is a courtesy copy of a complaint which Kelora is prepared to file in the federal district court in your jurisdiction. If no settlement is reached, Kelora will file this complaint after the expiration of the offer.**

This letter also creates a reasonable apprehension of litigation. You are therefore required to implement a litigation hold. Such a hold should include, but not be limited to, preserving all elements of the e-commerce and other infrastructure at your website. Please ensure that any archived or saved versions of the appropriate infrastructure are preserved at least until this matter is resolved. If you make changes to these systems, including but not limited to changes to the content, code, presentation, or software architecture, you are required to ensure that it is possible to deploy a pre-change version of the infrastructure and that the pre-change version of the infrastructure is preserved.

I look forward to hearing from you soon. Kelora sincerely hopes that litigation can be avoided.

Very truly yours,

Robert D. Becker

Enclosures

300259763.2

## LICENSE AGREEMENT

This License Agreement ("Agreement"), dated as of the later of the counterpart signatures below (the "Effective Date"), is entered into by and between:

Kelora Systems, LLC, whose address is 19925 Stevens Creek Boulevard, Suite 100, Cupertino, California 95014 ("Kelora"); and

Baldor Electric Company and all subsidiaries of which it owns at least 50% as of the Effective Date (collectively, "Licensee").

WHEREAS, Kelora represents and warrants to Licensee that Kelora owns certain patent rights relating to parametric search systems, including web-based parametric search systems, and performing parametric searches; and

WHEREAS, Licensee desires to obtain a license under Kelora's patent rights; and

WHEREAS, the Parties desire to enter into a license under Kelora's patents pursuant to the terms and conditions contained in this Agreement.

NOW THEREFORE, for valuable consideration, the receipt of which is acknowledged, and other consideration as set forth below, Kelora and Licensee agree as follows:

1. <u>Incorporation of Recitals.</u> The recitals and definitions set forth above are hereby incorporated into, and are made a part of, this Agreement.

2. <u>Payment To Kelora.</u>

    a. <u>Payment Option 1.</u> No later than November 18, 2011, Licensee shall pay to Kelora the sum of REDACTED

    b. <u>Payment Option 2.</u> No later than November 28, 2011, Licensee shall pay to Kelora the sum of REDACTED

    c. Payment according to Payment Option 1 or Payment Option 2, shall be by wire transfer or other mutually agreed method. The granting of the License is contingent on receipt of payment.

3. <u>License.</u> Upon receipt by Kelora of the payment required under Paragraph 2, Kelora grants to Licensee and Licensee accepts a non-exclusive, fully paid-up, worldwide, royalty-free, perpetual, irrevocable, indivisible, non-transferable (except as set forth below), license ("License") under U.S. Patent No. 6,275,821 and all related patents (specifically, any patents that issue from the patent applications underlying such patents, or any provisional or non-provisional application that is a continuation, continuation-in-part, reissue, reexamination, renewal, extension, or foreign counterpart of any application that led to such patent) ("the Licensed Patents") (i) to practice and have practiced on its behalf any and all subject matter

within the claims of the Licensed Patents (including, without limitation, providing parametric search services) at all websites owned and operated by or on behalf of Licensee solely for purposes of Licensee's own business, ("Licensed Sites") at any time during the term of the last-to-expire-or-terminate of the Licensed Patents; and (ii) to practice or allow others to practice on Licensee's behalf, and not on behalf of any other person or entity, any method or process claimed in the Licensed Patents solely for the purposes set forth in (i) above. It is contemplated that the services licensed herein will be provided for the benefit of Licensee's customers. Licensee's customers do not need a separate License to receive those services. Notwithstanding any other provision of this Agreement, the License does not grant any right under the Licensed Patents to host Internet web pages for others, to provide hosting or consulting services to others, or to sell software or hardware to others. These activities are not covered and will require a separate license. Licensee represents and warrant to Kelora that the revenues generated by the Licensed Sites as defined above were no greater than REDACTED for the year 2010. Because the amount of the payment specified in Paragraph 2 is based upon this representation and warranty by Licensee, Licensee acknowledges and understands that any breach of the foregoing representation and warranty shall automatically invalidate and render null and void the License above.

4. New Sites, Acquisitions, Transferability, Assignment, and Sublicensing.

a. This License does not include the right to assign or sublicense the rights granted under Paragraph 3 herein to any third party, without Kelora's express prior written consent.

b. If control of Licensee or all or substantially all of the assets of Licensee are transferred to a third party which is not, at the time of such a transfer, then a party in litigation in which a claim has been asserted concerning such third party's alleged infringement of the Licensed Patents, and such third party intends to operate and engage in the business of Licensee, the foregoing License shall transfer to such third party with no requirement for Kelora's consent; provided, however that such a transfer shall not provide any rights under the foregoing License to avoid liability for infringement of the Licensed Patents for: (i) such third party's then existing and past applications, web sites, domains, products, or services (other than the products and services provided by or for Licensee), or (ii) such third party's past infringement of the Licensed Patents for any applications, web sites, domains, products, or services (other than the products and services provided by or for Licensee).

c. If Licensee acquires 50% or more of any business entity ("Acquired Entity") after the Effective Date, and Acquired Entity is not, at the time of such acquisition, then a party in litigation in which a claim has been asserted concerning Acquired Entity's alleged infringement of the Licensed Patents or in negotiations with Kelora about such a claim, the websites owned and operated by Acquired Entity at the time of the acquisition shall be Licensed Sites, provided that the annual revenue of Acquired Entity is at most REDACTED at the time of acquisition by Licensee. If the annual revenue of Acquired Entity is greater than REDACTED at the time of acquisition by Licensee, the websites of Acquired Entity are not licensed hereunder and a separate license may be required.

      d. Websites created or acquired by Licensee after the Effective Date of this License shall be Licensed Sites, provided they are owned and operated by or on behalf of Licensee solely for purposes of Licensee's own business.

      e. Except as specified above, absent Kelora's prior written consent, the License is nontransferable (by operation of law or otherwise), and any attempted transfer will be void.

      f. Nothing herein precludes or shall be interpreted as exhausting or limiting in any way Kelora's right to require any entity to obtain a license under the Licensed Patents for making, using, selling, offering to sell, importing, exporting, distributing, or otherwise commercially exploiting claims of the Licensed Patents other than via the Licensed Sites.

5.    Releases.

      a. Release by Kelora. Subject to the terms and conditions of this Agreement, Kelora hereby releases and discharges Licensee, and each of its directors and officers, from all causes of action, claims and demands of whatever kind or nature that were or could have been asserted with respect to infringement of the Licensed Patents by the Licensed Sites on or before the Effective Date.

      b. Release by Licensee. Subject to the terms and conditions of this Agreement, Licensee hereby releases and discharges Kelora, and each of its managers, directors, officers and members, from all causes of action, claims and demands of whatever kind or nature arising out of the claims or defenses that were or could have been asserted with respect to the Licensed Patents on or before the Effective Date.

      c. No Assignment of Claims. Each Party represents and warrants to the other Parties that, as of the Effective Date, no claim of any kind relating to the subject matter of this Agreement has been assigned or otherwise transferred (voluntarily or involuntarily) in any manner.

6.    Representations and Warranties.

      a. By Licensee. Licensee represents and warrants that (i) it has full power and authority to enter into this Agreement, and (ii) this Agreement is a valid and binding agreement of Licensee enforceable against it in accordance with its terms.

      b. By Kelora. Kelora represents and warrants to Licensee that (i) as of the Effective Date, Kelora owns or controls no patent(s) or application(s) covering the business activities of Licensee known to Kelora, other than the Licensed Patents, (ii) Kelora has full power and authority to enter into this Agreement and to grant the License above, (iii) this Agreement is a valid and binding agreement of Kelora enforceable against it in accordance with its terms, (iv) Kelora is the sole owner of all right, title, and interest in and to the Licensed Patents, and (vi) Kelora has not entered into any other contracts, agreements, or obligations that would conflict with the License or this Agreement.

    7.    <u>Miscellaneous</u>.

    a.  <u>Notices</u>. Any notice or other paper, document or communication required or which may be given hereunder shall be in writing and shall be delivered personally or sent by a prepaid international "overnight" courier service (such as FedEx, DHL and UPS), and shall be deemed given and received when so delivered personally, or sent by facsimile, or if sent by courier service, on the date on which delivery was recorded in such service's package tracking system, to the party to whom notice is to be given. In the case of Kelora, unless otherwise specified in writing by an officer or other authorized representative of Kelora, such notices or other communications shall be given to:

> Robert D. Becker
> Manatt, Phelps & Phillips, LLP
> 1001 Page Mill Road, Bldg. 2
> Palo Alto, CA 94304
> Fax: 650.213.0260

In the case of Licensee, unless otherwise specified in writing by an officer or other authorized representative of Licensee, notices or other communications shall be given to:

> _____
> _____
> _____
> _____
> _____
> _____
> _____
> _____
> _____

    b.  <u>Severability</u>. Nothing contained herein shall be construed so as to require the commission of any act contrary to law, and wherever there is any conflict between any provisions contained herein and any present or future statute, law, ordinance or regulation, the latter shall prevail; but the provision of this Agreement which is affected shall be curtailed and limited only to the extent necessary to bring it within the requirements of the law.

    c.  <u>Further Assurances</u>. Each of the Parties shall execute and deliver any and all additional papers, documents and other assurances, and shall do any and all acts and things reasonably necessary in connection with the performance of their obligations hereunder to carry out the intent of the parties hereto.

    d.  <u>Modifications or Amendments</u>. No amendment, change or modification of this Agreement shall be valid, unless in writing and signed by all of the Parties.

    e.  <u>Entire Agreement</u>. This Agreement constitutes the entire understanding and agreement of the Parties with respect to its subject matter and any and all prior agreements,

understandings or representations with respect to its subject matter are hereby terminated and canceled in their entirety and are of no further force or effect.

  f.  Non-Waiver. No waiver by any Party hereto of a breach of any provision of this Agreement shall constitute a waiver of any preceding or succeeding breach of the same or any other provision hereof.

  g.  Counterparts. This Agreement may be executed in one or more counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument. The execution and delivery of counterparts of this Agreement, by facsimile or by original manual signature, regardless of the means or any such variation in pagination or appearance shall be binding upon the parties executing this Agreement.

  h.  Number and Gender. In this Agreement, the masculine, feminine or neuter gender, and the singular or plural number, shall each be deemed to include the others whenever the context so requires.

  i.  Captions. The captions appearing at the commencement of the sections hereof are descriptive only and for convenience in reference. Should there be any conflict between any such caption and the section at the head of which it appears, the section and not such caption shall control and govern in the construction of this Agreement.

  j.  Non-Agency. Nothing in this Agreement is intended or shall be deemed to constitute a partnership, agency, employer-employee, or joint venture relationship between Kelora and Licensee. Neither Kelora nor Licensee shall incur any debts or make any commitments for the other.

  k.  Third-Party Beneficiaries. Nothing in this Agreement shall be construed to give rise to any obligation on either Party hereto for the benefit of a third party or to confer any rights on any party other than the Parties to this Agreement, except as otherwise expressly set forth in this Agreement.

  8.  Confidentiality. The Parties to this Agreement agree that the discussions that led to this Agreement and the terms of this Agreement, including, without limitation, the amount of the payment made pursuant to Paragraph 2 and any other financial terms contained in the Agreement, are confidential and each Party agrees that it shall not, except as may be required by law or as may be required in connection with a legal proceeding, disclose such information to any third party other than to a limited group of its respective employees, affiliates, officers, directors, professional advisors, and representatives who have a need to know such information, without the prior written consent of the other parties. Either Party may disclose this Agreement in confidence to third parties acting under a duty of confidentiality in connection with business discussions for which such Party reasonably deems such disclosure to be necessary. Notwithstanding the foregoing, any Party may disclose the fact that the Licensed Patents were licensed on terms mutually satisfactory to each Party. Nothing in the foregoing shall prevent Licensee from disclosing or sharing this Agreement with any third party from whom Licensee may seek indemnity for payments or costs incurred arising out of or relating to this Agreement.

9. <u>No Challenge To Validity</u>. Except as set forth herein, Licensee hereby expressly waives its right to initiate, and agrees not to initiate, any proceeding (including any reexamination) or lawsuit in which it alleges or claims that the Licensed Patents are invalid or unenforceable. Licensee further agrees that it shall not otherwise voluntarily assist or support any other person or entity in connection with a challenge of the validity or enforceability of the Licensed Patents. This provision does not preclude Licensee from providing information as may be required by Court order, law, or judicial process, or from providing information or assistance to any third party from whom Licensee may seek indemnification for any payments made or costs incurred arising out of or relating to this Agreement. Licensee may assert defenses of invalidity and/or unenforceability and/or seek reexamination of any Licensed Patents in the event that Licensee is accused of infringing such Licensed Patents in the future.

10. <u>Governing Law</u>. This Agreement shall be governed and the terms and conditions herein construed according to the laws of the State of California without regard to that state's body of law controlling conflicts of law.

IN WITNESS WHEREOF, the Parties have executed this Agreement as of the later of the dates written below.

KELORA SYSTEMS, LLC                              LICENSEE

By:_____               By:_____
Name:_____               Name:_____
Title:_____             Title:_____
Date:_____              Date:_____

# UNITED STATES DISTRICT COURT

| | |
|---|---|
| KELORA SYSTEMS, LLC,<br><br>Plaintiff,<br><br>v.<br><br>BALDOR ELECTRIC COMPANY,<br><br>Defendant. | Case No. ***<br><br>**COMPLAINT FOR PATENT INFRINGEMENT**<br><br>**DEMAND FOR JURY TRIAL** |

Pursuant to Federal Rule of Civil Procedure 15(a)(1)(A), Plaintiff Kelora Systems, LLC ("Kelora"), for its Complaint against Defendant Baldor Electric Company ("Defendant"), alleges as follows:

## PARTIES

1. Plaintiff Kelora is a Delaware limited liability company with a place of business at 19925 Stevens Creek Boulevard, Suite 100, Cupertino, California 95014.

2. Defendant Baldor Electric Company has a principal place of business at 5711 R.S. Boreham, Jr. St., Fort Smith, Arkansas 72901.

## JURISDICTION

3. This is an action for patent infringement, arising under the patent laws of the United States, Title 35 of the United States Code, Sections 271 and 281 through 285. This Court has jurisdiction over the subject matter of this action pursuant to Title 28 of the United States Code, Sections 1338(a) and 1331.

4. Defendant is subject to personal jurisdiction in this Court because it is based in and/or does business in Arkansas, including but not limited to, by offering and providing goods and services in Arkansas.

**VENUE**

5. Venue is proper in this District under Title 28 of the United States Code, Sections 1391(b), (c) and/or (d), and 1400(b).

**BACKGROUND**

6. Kelora is the owner by assignment of all right, title, and interest in U.S. Patent No. 6,275,821 ("'821 patent"), entitled, "Method And System For Executing A Guided Parametric Search", which was duly and properly issued by the U.S. Patent & Trademark Office on August 14, 2001. A true and correct copy of the '821 patent is attached as Exhibit A.

7. A reexamination certificate for the '821 patent was duly and properly issued by the U.S. Patent & Trademark Office on November 2, 2010. A true and correct copy of the reexamination certificate for the '821 patent is attached as Exhibit B.

**CLAIM FOR RELIEF**
**INFRINGEMENT OF U.S. PATENT NO. 6,275,821**

8. Kelora incorporates the foregoing Paragraphs 1 through 7 as though fully set forth herein.

9. Defendant has infringed and continues to infringe the '821 patent by, inter alia, making and using parametric search systems, including web-based parametric search systems, and performing parametric searches that infringe the '821 patent.

10. By reason of the acts of Defendant alleged herein, Kelora has suffered damage in an amount to be proved at trial.

11. Defendant threatens to continue to engage in the acts complained of herein and, unless restrained and enjoined, will continue to do so, all to Kelora's irreparable injury. It would be difficult to ascertain the amount of compensation that would afford Kelora adequate relief for such future and continuing acts, and a multiplicity of judicial proceedings would be required. Kelora does not have an adequate remedy at law to compensate it for the injuries threatened.

## PRAYER FOR RELIEF

WHEREFORE, Kelora demands judgment as follows:

A. That Defendant and its parents, affiliates, subsidiaries, officers, agents, servants, employees, attorneys, successors, and assigns, and all those persons in active concert or participation with them, or any of them, be preliminarily and permanently enjoined and restrained from making, importing, using, offering for sale, selling, or causing to be sold any product or service falling within, or designed to conduct a method falling within, the scope of any claim of the '821 patent, or otherwise infringing or contributing to or inducing infringement of any claim of the '821 patent;

B. That Defendant and its parents, affiliates, subsidiaries, officers, agents, servants, employees, attorneys, successors, and assigns, and all those persons in active concert or participation with them, or any of them, be ordered to destroy or offer up to Kelora for destruction any and all products or services within the scope of any claim of the '821 patent that are within Defendant's possession, custody, or control;

C. That Kelora be awarded its actual damages, including lost profits and price erosion, but in no case less than a reasonable royalty, to be assessed by or under the Court's discretion, adequate to compensate Kelora for Defendant's infringement of the '821 patent;

D. That Kelora be awarded pre-judgment interest and post-judgment interest at the

maximum rate allowed by law;

    E.    That the Court order an accounting for damages;

    F.    That the Court declare this to be an exceptional case pursuant to 35 U.S.C. Section 285 and award Kelora its attorneys' fees;

    G.    That the Court award enhanced damages pursuant to 35 U.S.C. Section 284 due to the willful and wanton nature of Defendant's infringement of the '821 patent;

    H.    That Kelora be awarded costs of court; and

    I.    That Kelora be awarded such other and further relief as the Court deems just and proper.

## DEMAND FOR A JURY TRIAL

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Kelora demands a trial by jury on all issues triable of right by a jury.

DATED: November 29, 2011

Respectfully submitted,

By: _____
Robert D. Becker
Ronald S. Katz
Shawn G. Hansen
MANATT, PHELPS & PHILLIPS, LLP
1001 Page Mill Road, Building 2
Palo Alto, CA 94304

*Attorneys for Plaintiff*
KELORA SYSTEMS, LLC

300330820.1